## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CANDACE TERRELL, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. 09CV0626-RWS-LTW |
| v. | ) | |
| | ) | |
| OTS, INC. d/b/a OMNITECH | ) | |
| SOLUTIONS and OMNITECH | ) | |
| INSTITUTE; CHARLTON | ) | |
| CARLOS LESTER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **CONSOLIDATED PRETRIAL ORDER**

### 1.

There are no motions or other matters pending for consideration by the court except as noted:

**No motions are currently pending.  However, the parties anticipate that each of them may file one or more motions in limine.**

### 2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**The names of the parties are correct as shown in the caption above.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**This Court has jurisdiction over Plaintiff's claims for sexual harassment and retaliation in accordance with 28 U.S.C. § 1331. This Court presently has pendent jurisdiction over Plaintiff's state law claims of battery and negligent retention and supervision in accordance with 28 U.S.C. § 1367.**

**However, it is Defendants' position that should Plaintiff's Title VII claims cease to remain pending before this Court, for whatever reason, this Court would no longer have pendent jurisdiction over Plaintiff's state law claims.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiff:**

**Benjamin F. Barrett**
**Georgia Bar No.  039586**
**Attorney for Plaintiff**
**BARRETT & FARAHANY, LLP**
**1401 Peachtree Street**
**Suite 101**
**Atlanta, GA 30309**

**Defendants:**

**Louis R. Cohan**
**Georgia Bar No. 173357**
**Attorney for Defendants**
**WEINSTOCK & SCAVO, PC**
**3405 Piedmont Rd., NE**
**Suite 300**
**Atlanta, GA  30305**

Other Parties:  (specify)

**None.**

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**Defendants have no objection to Plaintiff opening and closing arguments to the jury in accordance with LR 39.3(B)(2)(b).**

7.

The captioned case shall be tried to **a jury.**

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**Defendants request that the trial be bifurcated between the issue of liability and damages pursuant to Fed. R. Civ. P. 42(b).  "Whether to bifurcate a trial is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." Brown v. Toscano, 630 F. Supp. 2d 1342, 1345 (S.D. Fla., 2008) (citations omitted). Bifurcating the trial of the instant case would serve judicial economy, avoid**

-3-

inconvenience, and not prejudice any of the parties.  In fact, bifurcation is particularly fitting in Title VII cases in order to allow the jury to focus solely on the issue of liability first, which involves complex, shifting burdens of proof, before hearing evidence of damages. See <u>Baxter v. Savannah Sugar Refining Corp.</u>, 495 F.2d 437 (5th Cir., 1974).  In bifurcating the trial between liability and damages, the jury would be allowed to focus solely on the complicated issues of liability in this case without such evidence being muddled by the unrelated evidence of alleged damages.  Moreover, judicial economy would also be served by bifurcating this case because in the event that the jury determines Defendants are not liable for any one of Plaintiff's six (6) claims, the Court would then not have to dedicate its time and resources to hearing damages evidence with respect to such claim(s).  Finally, Plaintiff would not be prejudiced if this case were to be bifurcated, but rather, Plaintiff would also benefit from being able to focus the jurors' attention on the issues and facts surrounding liability first and then, only if necessary, address the issue of damages to the jury.

        Plaintiff objects to bifurcation.  The determination of whether bifurcation is appropriate is left to the sound discretion of the District Court. See <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1301 (11th Cir. 2001). Bifurcation is the exception rather than the rule. See <u>Response of Carolina, Inc. v. Leasco Response, Inc.</u>, 537 F.2d 1307, 1323-24 (5th Cir.1976) ("[S]eparation of issues is not the usual course that should be followed"). The burden rests with the moving party to show that bifurcation is necessary. See 9A Wright & Miller, <u>Federal Practice and Procedure: Civil 3d</u> § 2388 at 124-25 & n. 23 (collecting cases) (2008).

        Bifurcation of liability and damages may be warranted where the party seeking bifurcation can establish that the damages will overwhelm the jury's ability to determine liability, or where the liability issue is so tenuous that it is likely that the parties will not reach the issue of damages. <u>Ayers v. Wal-Mart Stores, Inc.</u>, 941 F.Supp. 1163, 1165-66 (M.D.Fla.1996).  That is not the case in the instant matter.  Instead, this matter resembles other cases where bifurcation has been denied because the liability and damages issues are so intertwined that efficiency will not be achieved or confusion may result from any attempt at separation, <u>e.g.</u>, when same witnesses would have to be called, <u>Vichare v. AMBAC Inc.</u>, 106 F.3d 457 (2d Cir. 1996); when the two issues are so interwoven that one could not be submitted to the jury independently of the

other without confusion and uncertainty, <u>United Air Lines, Inc. v. Wiener</u>, 286 F.2d 302 (9th Cir. 1961); where evidence of the plaintiff's injuries is relevant to the liability issue, <u>see</u> <u>Greene v. City of Green Bay</u>, 2009 WL 1973552, at *1 (E.D. Wis. 2009) (slip op.); where bifurcation would result in delay, <u>Snoznik v. Jelf-Wen, Inc.</u>, 2009 WL 929081, (W.D.N.C. 2009); or where having two trials would necessitate repetition of testimony, increasing expense and inefficiency, <u>see</u> <u>Thorndike ex rel. Thorndike v. Daimlerchrysler Corp.</u>, 220 F.R.D. 6 (D.C. Me. 2004).

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.  **Not applicable.**

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any.  Counsel may be permitted to ask follow-up questions on these matters.  It shall not, therefore, be necessary for counsel to submit questions regarding these matters.  The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to plaintiff's voir dire questions:

Defendants object to Plaintiff's Voir Dire Question No. 25 because the question is nonsensical and confusing.

Defendants object to Plaintiff's Voir Dire Question No. 26 because the response it seeks to elicit is irrelevant to the instant action, because the response it seeks to elicit would be mere opinion and speculation by the jurors, and because the question posed suggests that a retaliation did in fact occur, which is an issue for the jury to determine.

Defendants object to Plaintiff's Voir Dire Question No. 27 because the response it seeks to elicit is irrelevant to the instant action, because the response it seeks to elicit would be mere opinion and speculation by the jurors, and because the question posed suggests that a retaliation did in fact occur, which is an issue for the jury to determine.

Defendants object to Plaintiff's Voir Dire Question No. 33 because it is not an accurate statement of law ("more likely than not" is not the correct legal standard), it does not include any explanation of what happens when a juror accepts some allegations but rejects other allegations, and it does not include any explanation of what it means to "find for Plaintiff," specifically the distinction between liability and damages.

Defendants object to Plaintiff's Voir Dire Questions No. 35 because it is confusing and because it suggests that if the jury believes Plaintiff's allegations then the jury is required to award Plaintiff her requested damages.

Defendants objects to Plaintiff's Voir Dire Question No. 36 because it is not an accurate statement of the law ("more likely than not" is not the correct legal standard) and because it is not an accurate statement of the law to suggest that there is no need for the jury to make a liability determination.

Defendants object to Plaintiff's Voir Dire Question No. 37 because it is a statement of what "some" unidentified people think.

Defendants object to Plaintiff's Voir Dire Question No. 39 because it is confusing and because it improperly suggests to the jury that the Court believes the jury should have sympathy for the Plaintiff.

Defendants object to Plaintiff's Voir Dire Question No. 40 because it is confusing and because it improperly suggests to the jury that the Court believes the jury should have sympathy for the Defendants.

Defendants object to Plaintiff's Voir Dire Question No. 41 because it is confusing, because it is compound, and because it presumes the jurors must come forth with some helpful information.

Defendants object to Plaintiff's Voir Dire Question No. 42 because it is confusing, because it is compound, and because the prospective jurors will most likely come forward with some reason that it would hard for them to serve as a juror on this kind of case.

Defendants object to Plaintiff's Voir Dire Question No. 43 because it is confusing, because it improperly suggests that failing to compensate Plaintiff is irresponsible, and because the preamble improperly purports define the law on damages.

Defendants object to Plaintiff's Voir Dire Question No. 45 because it is confusing and because it suggests that jurors have rights but only mentions one.

Defendants object to Plaintiff's Voir Dire Question No. 46 because the preamble is confusing and inaccurate, because many jurors would likely disagree that "nothing can be more important," and because it suggests that the jurors should not deliberate or reconcile their differences.

Defendants object to Plaintiff's Voir Dire Question No. 47 because it improperly suggests that OmniTech's name recognition, reputation, or financial influence are relevant to the case and because it improperly emphasizes OmniTech by failing to make the same inquiry regarding the other parties to this case.

Defendants object to Plaintiff's Voir Dire Question No. 50 because it improperly suggests that there was emotional distress and that the jury should award damages for same.

Defendants object to Plaintiff's Voir Dire Question No. 51 because it improperly suggests that it is the "business" of jurors to award damages.

Defendants object to Plaintiff's Voir Dire Question No. 52 because it improperly suggests that it is wrong for a jury to limit its award of damages proven with certainty and because it improperly suggests that it is appropriate to award more damages that are proven with certainty.

Defendants object to Plaintiff's Voir Dire Question No. 53 because it improperly suggests that it is wrong to refrain from awarding damages unless damages can be seen.

State any objections to defendants' voir dire questions:

Plaintiff objects to the first sentence of Defendants' Voir Dire Question No. 3 because it improperly attempts to insert evidence into the Voir Dire process.

Plaintiff objects to Defendants' Voir Dire Question No. 4 because it attempts to improperly insert evidence into the Voir Dire process.  As for the second sentence, Plaintiff objects to the extent that the question includes the word "unproven."

Plaintiff objects to Defendants' Voir Dire Question No. 5 because it attempts to improperly insert evidence into the Voir Dire process.  Moreover, the representation regarding the evidence is incorrect.

Plaintiff objects to Defendants' Voir Dire Question No. 6 because it attempts to improperly insert evidence into the Voir Dire process.

Plaintiff objects to Defendants' Voir Dire Question No. 7 as it is an incomplete statement of the law regarding the standards of proof in this case.

Plaintiff objects to Defendants' Voir Dire Question No. 8 as its wording is improperly prejudicial against the Plaintiff.  Moreover, it is an incomplete statement regarding the standards of proof in this case.

**Plaintiff objects to Defendants' Voir Dire Question No. 9 as its wording is improperly prejudicial against the Plaintiff.**

**Plaintiff objects to Defendants' Voir Dire Question No. 20 as its wording is improperly prejudicial against the Plaintiff.**

**Plaintiff objects to Defendants' Voir Dire Question No. 21 as its wording is improperly prejudicial against the Plaintiff.**

State any objections to the voir dire questions of the other parties, if any:

**Not applicable.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed. R. Civ. P. 47(b).

**The parties agree that there is no need for additional strikes.**

**Plaintiff requests that the case be tried by a jury of six (6) with two alternates to be dismissed once deliberations begin.**

**Defendants request that this case be tried by a jury of eight (8) such that in the event a juror cannot or does not appear, a jury of six (6) would remain intact such that a verdict could be rendered.**

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**There is no pending related litigation.**

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence.  All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading.  In negligence cases, each and every act of negligence relied upon shall be separately listed.  For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage.  Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is Defendants' outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading.  For any counterclaim, Defendants shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage.  Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

17.

The legal issues to be tried are as follows:

**Plaintiff's Legal issues:**

(1) Whether Plaintiff was sexually harassed as defined by Title VII and corresponding case law.

(2) Whether Plaintiff can establish that OTS, Inc., d/b/a Omnitech Solutions and OmniTech Institute ("OTS"), is liable to Plaintiff under Title VII for sexual harassment and/or retaliation.

(3) If Plaintiff can establish a Title VII claim, whether Plaintiff is entitled to any damages, and, if so, in what amount.

(4) Whether Plaintiff can establish a claim for battery against Carlos Lester under Georgia law.

(5) If Plaintiff can establish a claim for battery, whether Plaintiff is entitled to any damages, and, if so, in what amount.

(6) Whether Plaintiff can establish a claim for negligent supervision or retention by OTS under Georgia law.

(7) If Plaintiff can establish a claim for negligent supervision or retention, whether Plaintiff is entitled to any damages, and, if so, in what amount.

(8) Whether Plaintiff is entitled to recover attorneys' fees and/or costs.

**Defendants' Legal Issues:**

(1) Whether OTS, Inc. sexually harassed Plaintiff in violation of Title VII?

(2) Whether OTS, Inc. retaliated against Plaintiff in violation of Title VII?

(3) Whether OTS, Inc. is liable for negligent supervision and/or retention in violation of Georgia law?

(4) Whether Lester battered Plaintiff?

(5) Whether Plaintiff is a prevailing party with respect to any of her claims?

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be

permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendants, and "G-3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes.   A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

**Objections to the exhibits are attached to the exhibit list of the party or parties against whom the objections are raised.**

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**Plaintiff designates portions of the depositions of Maxanna Scott and Serena Edwards to be introduced at trial. Plaintiff will attempt to procure the attendance of these witnesses at trial, but because they both live out of state, Plaintiff may have to rely upon their deposition testimony at trial.**

**Plaintiff designates the following pages of the Edwards deposition: 5-7, 12-29, 32-41, 43-44, 49, 51-56, 66, and 163-164. Plaintiff designates the following pages of the Scott deposition: 13, 49-77, 86-87, 156-158, 160-162, and 190-191.**

**Defendants object to the use of the depositions of Maxanna Scott and Serena Edwards at trial. Defendants further object to the specific testimony sought to be used by Plaintiff via these depositions. Defendants will timely supplement these objections in accordance with the rule set forth below.**

**Moreover, in the event the Court allows Plaintiff to use the depositions of Maxanna Scott or Serena Edwards at trial, Defendants request that the entirety of these depositions be submitted so that the jury benefits from the value of seeing the full-cross examination of these witnesses, as well as the context of the testimony upon which Plaintiff is relying.**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than

the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

**The parties may file trial briefs according to the preferences of the Court at a later date.**

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, NDGa will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

**The parties will submit their respective requests for charge as directed by the Court.**

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**Plaintiff's proposed verdict form is attached as Exhibit I-1.**

**Defendants' proposed verdict form is attached as Exhibit I-2.**

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side.  Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**Not applicable.**

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed findings of fact and conclusions of law not later than the opening of trial.

**Not applicable.**

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met **on multiple occasions prior to the close of discovery,** to discuss in good faith the possibility of settlement of this case. The court (_____) has or (__**X**__) has not discussed settlement of this case with counsel. It appears at this time that there is:

-16-

| | |
|---|---|
| (_____) | A good possibility of settlement. |
| (_____) | Some possibility of settlement. |
| (___X___) | Little possibility of settlement. |
| (_____) | No possibility of settlement. |

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

**The parties believe a special setting of the trial of this matter would be appropriate because a number of necessary witnesses live out of State and/or are no longer employed by the company and are therefore not subject to the control of either party.**

28.

The plaintiff estimates that it will require **2-3** days to present its evidence. The defendant estimates that it will require **1-2** days to present its evidence.  It is estimated that the total trial time is **4-5** days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (_____) submitted by stipulation of the parties or (____) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this _____ day of _____, 2010.

_____
The Honorable Richard W. Story
United States District Judge


Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

/s/Benjamin F. Barrett____
Georgia Bar No. 039586
Attorney for Plaintiff
BARRETT & FARAHANY, LLP
1401 Peachtree Street
Suite 101
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 facsimile
ben@bf-llp.com

/s/ Louis R. Cohan _____
Louis R. Cohan
Georgia Bar No. 173357
Attorney for Defendants
WEINSTOCK & SCAVO, P.C.
3405 Piedmont Rd., N.E.
Suite 300
Atlanta, GA  30305
(404) 231-3999
(404) 231-1618 facsimile
lcohan@wslaw.net

**ATTACHMENT A**

**QUESTIONS WHICH THE PARTIES**
**REQUEST THAT THE COURT PROPOUND TO JURORS**
**CONCERNING THEIR LEGAL QUALIFICATIONS TO SERVE**

1.  Are you related by blood or marriage to an officer, director, agent or employee of OTS, Inc., OmniTech Solutions, or OmniTech Institute?

2.  Are you related by blood or marriage to Charlton Carlos Lester?

3.  Are you related by blood or marriage to the Plaintiff Candace Terrell?

4.  Are you related by blood or marriage to Eleanor Mixon Attwood, Benjamin F. Barrett, Amanda A. Farahany, Jule S. Northup, or any member or employee of the law firm of Barrett & Farahany, LLC?

5.  Are you related by blood or marriage to Louis Cohan, Elizabeth Ann Frey, or any member or employee of the law firm of Weinstock & Scavo, P.C.?

6.  Are you now or have you ever been a shareholder, employee, officer, director, or agent for OTS, Inc., OmniTech Solutions, or OmniTech Institute?

7.  Does any member of this panel know of OTS, Inc., OmniTech Solutions, or OmniTech Institute?

8.  Does any member of this panel know Candace Terrell?

9.  Does any member of this panel know Charlton Carlos Lester?

10.  Are you a citizen of the United States?

11.  Are you at least 18 years old?

12.     Do you currently live in one of the following counties: Cherokee, Clayton, Cobb, DeKalb, Douglas, Fulton, Gwinnett, Henry, Newton, or Rockdale?

13.     Have you resided within Cherokee, Clayton, Cobb, DeKalb, Douglas, Fulton, Gwinnett, Henry, Newton, or Rockdale County for at least one year?

14.     Are you able to read, speak, and understand the English language?

15.     Do you have any mental or physical problem which might impair your ability to render satisfactory jury service in this action? Please explain.

16.     Are you currently taking any medicine or drug that might impair your ability to render satisfactory jury service in this action? Please explain.

17.     Do you have pending against you a charge for the commission of a crime, or have you been convicted in a state or federal court for the commission of a crime, punishable by imprisonment for more than one year?  If so, have your civil rights been restored by pardon or amnesty?

**ATTACHMENT B-1**

**QUESTIONS WHICH PLAINTIFF REQUESTS THAT
<u>THE COURT PROPOUND TO JURORS ON VOIR DIRE
EXAMINATION</u>**

1.   Do you know, however slightly, any person who works or has worked for OTS, Inc., OmniTech Solutions, or OmniTech Institute?  If your answer is yes, then also state the position in which this person is employed, the department in which this person works, and the dates of employment.

2.   Do you know, however slightly, any person who works or has worked for or with Charlton Carlos Lester?  If your answer is yes, then also state the position in which this person is employed, the relationship to Mr. Lester, and the dates of employment.

3.   Have you ever had any interaction with Charlton Carlos Lester?  If so, please describe the nature of your interaction and when it took place.

4.   Have you ever transacted business with any employee of OTS, Inc., OmniTech Solutions, or OmniTech Institute?

5.   What is your education level (e.g., high school graduate, attended college, graduate of college, graduate school, degrees held, specialized training)?

6.   Have you had any prior experience with the legal system as a plaintiff or defendant?  If so, what was the result? Were you satisfied or dissatisfied with the overall experience?

7.   Have you ever been a witness in any legal proceeding?  What aspect were you a witness for? Were you satisfied or dissatisfied with the overall experience?

8.   Have you ever engaged the services of an attorney? Were you satisfied or dissatisfied with the overall experience?

9.      Have any of you ever had occasion to meet Plaintiff Candace Terrell?  If so, please describe the nature of your contact with her.

10.     Are any of you acquainted with or related to any of the attorneys employed by the Defendants, or any member of the firm of Weinstock & Scavo, P.C.?

11.     Have you or any member of your family attended law school, engaged in the practice of law, or worked in a law office?

12.     Are there any of you who yourself, or any member of your immediate family, has ever been a plaintiff or a defendant in any suit brought as a result of alleged sexual harassment or retaliation?

13.     Are you or any member of your immediate family at this time a party to a lawsuit?

14.     Have you served previously on a jury in either the state or federal court?  If so, what type of case was it?  Was the jury able to reach a verdict?  Were you the foreperson?

15.     Do you have any familiarity with the case law regarding employment discrimination?  Sexual harassment?  Retaliation?  If so, state the source of your information or legal training and what you understand the law to be.

16.     Have any of you or any of your relatives or close personal friends ever been treated differently because of your sex or gender? Sexually harassed?

17.     Have you or any of your relatives or close personal friends ever been retaliated against because you complained about something unlawful?

18.     Have you or any member of your immediate family ever served in the military?

19.   Have you or any of your relatives of close personal friends ever been involved in a legal dispute with a current or former employer?

20.   Have you had an occasion to meet any of the following people who may be called as witnesses in this case?   **[PLEASE SEE WITNESS LISTS ATTACHED TO PRETRIAL ORDER]**

21.   Is there any reason why you could not give a fair and impartial hearing to either party in a case where the Plaintiff alleges she was sexually harassed?   Retaliated against for complaining about sexual harassment?

22.   Have you ever been a member of or active in any kind of church, school, fraternal, service, business, professional, environmental, civic, social, neighborhood or labor organization?

23.   Do you have any religious beliefs or principles that would make it difficult or impossible for you to serve as a juror in this case?

24.   Are you an employer or do you work in a supervisory or management capacity for a company or agency?

25.   Does anyone believe that no employee is entitled to be paid for having to endure sexual harassment?

26.   How common do you think it is that an employee who reports sexual harassment is retaliated against?

27.   Do you believe that sometimes an employee's fear of retaliation is so strong that she doesn't immediately report the harassment?

28.   Have you or any close personal friend been accused of sexual harassment?  Retaliation?

29.   Have you read books and magazine articles or seen television shows about sexual harassment?

30.   What organizations do you or your family members belong to?

31.     What radio stations do you listen to regularly?

32.     What television shows do you look at regularly?

33.     If you find that it is more likely than not that the Plaintiff's allegations are true, you must find for the Plaintiff in this case. Please raise your hand if you would need either more proof or more certainty than "more likely than not" before you find for the Plaintiff.

34.     This is a case in which money damages are sought as compensation for sexual harassment and retaliation.  Do you have any disagreement whatsoever with our system of justice which provides that disputes such as this should be brought before a jury of people such as yourself for resolution?

35.     The Plaintiff is seeking back pay and compensatory and punitive damages in a significant amount.  If you believe from the evidence presented and the law as given you in the charges by the Court that Plaintiff is entitled to recover such amount, please raise your hand if you would have any hesitation whatsoever about awarding a significant amount of damages.

36.     In order to award damages under some of Plaintiff's claims, you only need to determine whether it is more likely than not that the damages that the Plaintiff has asserted is the correct amount. Please raise your hand if you would need more proof than that to award money to the Plaintiff.

37.     Some people feel that a plaintiff should not come to court asking a jury to compensate them for the damages they allege to have suffered.  Others feel that it is appropriate.  Are you closer, even a little bit, to the group that feels that a plaintiff should not come to court asking a jury to award an amount of money for damages?

38.     How do you feel about whether there should be upper or lower limits on the amount of money jurors should be allowed to give?

39.   At the end of this trial, if you think it will take just $50 to make up for what happened here – but if you know that the Plaintiff wants much more than $50 – what trouble would have you have ignoring what the Plaintiff wants and deciding on a verdict of only fifty dollars, if that's what you think is fair, in spite of feeling sorry for the Plaintiff?

40.   Now here's the other side of that question.  If you decide it will take, say, twenty-five million dollars to make up for what happened to the Plaintiff, what trouble would you have – even a little – in deciding on a verdict like that if you thought it was fair, in spite of feeling sorry for the defendants, who'll want it to be much less?

41.   Given the kind of person you are, your attitudes, life experiences, opinions, everything about you, what is there about you that might help you, even a little, in being a juror on this kind of case?  Other than your ability to be fair and listen to both sides?

42.   Given the kind of person you are, what is there about you that you think might make it just a little bit harder for you to be a juror in this kind of case?

43.   Responsibility means paying enough money compensation to fully equally the losses and the level of harm – without putting anything into the scale except those losses and harms.  That's the law.  Who here thinks they might have trouble, even a little, keeping things off the scale that don't belong here?

44.   What else is there – anything at all – that you would want to know about you, if you were standing up here and trying to decide who will be on the jury?  Anything?  Even if you're not sure it makes any difference?

45.   If you are a juror in this case, you will have some rights.  It is extremely important that you understand these rights, and that you will exercise them as often as the need arises.  First, you will have

the right to hear all the testimony.  So if a witness says something you don't hear, will you be comfortable raising your hand and telling the judge, "Your honor, I did not hear what the witness said." Will you do that?

46.   As you a juror you will have the right to understand the law. Nothing can be more important.   But every so often during deliberations, jurors disagree over what the law is.  Sometimes a juror is just not sure.  And sometimes a discussion will start about what the law really is.  So if any of that happens, instead of trying to decide among yourselves, will you be comfortable telling your foreperson to knock on the jury room door and ask the bailiff to tell the judge there is something about the law you need to hear about again?

47.   Is there anyone who would be inclined to favor OmniTech in this case due to its reputation, name-recognition or financial influence in the community?

48.   Do any of you work in the human resources department of any company?   If so, does your company maintain any policy regarding sexual harassment?

49.   Do any of you feel that it would be difficult for you to render an unbiased and impartial verdict in this case for any reason that we have not discussed?

50.   Who feels they could not under any circumstance support an award of money for emotional distress, no matter how severe and no matter if the facts and law called for such an award?

51.   Who on the jury panel believes that juries should not be in the business of awarding money damages to people for psychological harm, such as mental anguish, anxiety, stress and/or trauma– regardless of the evidence?

52.   Who on the jury panel believes that people whose rights were violated should be awarded only the sum of money that they can

prove with exact certainty they lost as a result of their rights being violated?

53.     Who on the jury panel believes that, unless you can actually see some kind of damage–like lost income or a broken bone–there has not been any damage?

Plaintiff reserves the right to ask any questions identified in A or B-2 to this Pretrial Order to the extent that they are not asked by the Court or by Defendants.   Plaintiff also reserves the right to ask reasonably related follow-up questions to any of the enumerated questions.

**ATTACHMENT B-2**

## QUESTIONS WHICH DEFENDANTS REQUEST THAT THE COURT PROPOUND TO JURORS ON VOIR DIRE EXAMINATION

1.    Have any of you ever been accused of something you did not do?

2.    Have any of you ever had to fire an employee?  Or have you been involved in the termination of an employee?

3.    After being fired, Ms. Terrell has accused Mr. Lester of sexual harassment and the other claims in this case.  Has any member of the panel been accused of sexual harassment, discrimination, or retaliation?  You will not be asked to discuss any details you are uncomfortable with.

4.    Ms. Terrell may offer evidence from as many as 10 years ago, that others have made unproven allegations of sexual harassment in an effort to prove that she, herself, was sexually harassed.  Is there anyone who would be so prejudiced by the earlier unproven accusations of others that you would be unable to fairly evaluate the evidence in this case?

5.    It is not anticipated that Ms. Terrell will offer the testimony of any witness who observed Ms. Terrell being sexually harassed.  Is there any member of the panel who would be unable to hear and fairly evaluate the evidence that is presented given the absence of corroborating witnesses?

6.    It is expected that you will hear evidence in this case that prior to being fired, Ms. Terrell referred to Mr. Lester, the owner of the company, as the "head n_gger in charge."  Is there any member of the panel who would be so bothered by that language that you would be unable to hear and fairly evaluate the balance of the evidence in the case?

7.      After the evidence is presented, the Judge (I) will explain the law to you. One of the things the Judge (I) will explain is that the Plaintiff has the burden of proving her case. Is there any member of the panel who would be unable to follow my instruction, but would instead insist the Defendants disprove what Ms. Terrell alleges?

8.      If the evidence, together with the law as given to you by the Court (me), convinced you that Ms. Terrell failed to prove her case, is there any member of the panel who would be unable to find for the Defendants and against Ms. Terrell?

9.      If the evidence, together with the law as given you by the Court (me), convinced you that Plaintiff proved one or more of her claims, is there any member of the panel who would be unable to be fair in determining an appropriate amount of damages, even if the appropriate amount of damages was $0 or a nominal amount like $1.00?

10.     Has any member of the panel been named as either as a plaintiff or as a defendant in any lawsuit?

11.     Has any member of the panel ever testified under oath in Court?

12.     Has any member of the panel had any legal training of any kind (e.g. paralegal classes, law related classes, law school classes, etc.)?

13.     Is any member of the panel related by blood or marriage to any person who has undergone any legal training of any kind?

14.     Does any member of the panel have any knowledge regarding the laws governing employment discrimination, sexual harassment, or retaliation?

15.     Has any member of the panel ever complained, either formally or informally, about being mistreated or harassed at work?

16.     Has any member of the panel ever felt that they were treated differently at work because of their sex or gender?

17.  Does any member of the panel know of a family member or close friend who ever complained, either formally or informally, about being mistreated or harassed at work?

18.  Does any member of the panel know of a family member or close friend who felt that he/she was treated differently at work because of his/her gender?

19.  Is there any reason why you could not be fair and impartial in a case involving accusations of discrimination, sexual harassment, or retaliation?

20.  If you find that Plaintiff did not satisfactorily prove her case, would you have a problem finding for the Defendants?

21.  If you find that Plaintiff did not satisfactorily prove her case, would you have a problem not awarding Plaintiff any damages?

22.  Does any member of the panel think he or she would favor Ms. Terrell in this case simply because she filed this lawsuit against OTS, Inc. and Mr. Lester?

23.  Does any member of the panel think that it would be difficult, for any other reason not already discussed, to be a fair and impartial juror in this case?

24.  This case is expected to take a full week to present.  Is there any member of the panel who is literally unable to be here for the week?

25.  Is there any member of the panel who would literally be so distracted by other matters that you could not hear and fairly evaluate the law and the evidence in this case?

      Defendants reserve the right to ask any other questions indentified in

Attachment A or B-1 to the extent that those questions are not propounded

by the Court or by counsel for Plaintiff.  Defendants also reserve the right to ask reasonably related follow-up questions to the enumerated questions listed above.

**ATTACHMENT C**

**PLAINTIFF'S OUTLINE OF THE CASE**

I.     Factual Outline

Defendant Lester is the founder, CEO, and President of Defendant OTS, Inc., which has owned and operated OmniTech Institute, an adult vocational school, since 2001.  In March of 2007, Lester hired the Plaintiff, Candace Terrell, as the office/business manager at OmniTech, reporting directly to Lester.  Shortly after Terrell's arrival, Lester asked Terrell to meet with him over dinner to discuss her position.  He took her to his house, which he termed the "corporate office," where his conversation focused on Terrell's status as a "trusted employee," the number of other people who had come to the "corporate office," personal information about herself and Lester, and how beautiful she was.  As her employment progressed, Lester continued to tell Terrell how beautiful she was and how pretty her legs were. He asked her what size bra she wore because her breasts looked smaller at her interview; he said that he could relieve her stress with sex; he gave Terrell a substantial pay raise; and he called her after hours to ask her out. Further into Terrell's tenure, Defendant Lester made several comments related to his penis, which he called his "dick," asking her if she could see

the imprint his penis was making in his pants, telling her that his "dick was so hard" that it was pushing him away from his desk, and stating that he could not walk through the school because his penis was so hard.  He also told her that he wanted to have some "little Mr. Lesters" with her and asked her to accompany him on a Bahamas vacation.  At one point, when Terrell had her back turned to a construction worker, Lester told the worker who was looking at her, "don't do that, that's mine."  In addition to these comments, Lester also touched Terrell, hugging her in a way that made her uncomfortable, approaching her from the rear and rubbing her shoulders and her arms, and attempting to kiss her.  This sort of contact occurred three to four times a week.  Terrell's response to Defendant Lester's sexual advances was to tell him that she was not interested; she was a married woman; and she took her vows seriously.

In May 2007, Lester moved Terrell to the Financial Aid office in the basement, explaining to Terrell that they did not have good chemistry. According to Renee Alston, Terrell's new supervisor, Lester told Alston that he was moving Terrell to the Financial Aid office because she was not a good fit in the business office, and that she was detail oriented.  Terrell

asked Lester for an explanation in writing for the change, but he refused to provide one.

In the Financial Aid position, Terrell did not have any of the same job duties she had when working for the CEO, except for a two-week period when she was asked to perform some of her former responsibilities.  Her new job was to complete financial aid forms in the Admissions office. Lester also told Terrell that her salary would be reduced.  However, before she had the opportunity to receive a diminished pay check, Lester fired Terrell in June 2007, stating that he did not think it would work out between them.

Evidence gathered during discovery reveals that beginning at least in 2001, six years prior to Terrell's employment, Defendant Lester had sexually harassed several female employees and a student, including Nikki Jenkins, Maxanna Scott, Nicole Broadway, Serena Edwards, and Ebony Lassiter.  After Terrell left OmniTech, Lester harassed another employee, Tuwanda Braxton.  A brief summary of their expected testimony follows:

(1)    Nicki Jenkins worked as a business manager at OmniTech Institute in the spring of 2001.  Jenkins told Lester she was not romantically

interested in him after he proclaimed his affection for her.[1]  In addition to verbal overtures, Lester pressed his pelvic area to Jenkins's buttocks as she bent down to pick up some papers she had dropped.  Over the following two weeks, Lester began to take away responsibilities from Jenkins.  Jenkins left OmniTech two weeks after the physical touching because Lester told her she would have to move to the Admissions Department at half her salary or leave the company.

(2) Maxanna Scott began working at OmniTech Institute in January 2001 through a temporary agency.  In April of that same year, she began to work as an OmniTech employee slated for the Receptionist position.  By July 2001, Lester had promoted Scott and increased her pay.  That summer, Lester began to tell her she was attractive and call her at home after hours about non-business-related topics.  At one point, after Lester asked Scott to search for airline tickets to Cancun, Mexico for him, he asked Scott to accompany him; she declined. Lester told Scott that he was "very good in bed and that once somebody sleeps with him, you know, they would never really want to sleep with anyone else."  Lester also called her one evening to

---

[1] When Lester first approached her, Jenkins was not surprised, as a co-worker had already warned her that Lester sexually harassed women employees.

tell her how attracted he was to her, breathing heavily as he spoke.  When Scott told Lester that he was making her uncomfortable, his response was that he was untouchable because his lawyers could get him out of trouble. He continued to call Scott until February 2002, when she changed her phone number because of his calls.  In June of 2002, Defendants terminated Scott for "lack of work."  The following month, Scott filed suit in this Court based, in part, on Lester's sexual harassment. Louis Cohan from Weinstock & Scavo appeared at OmniTech to investigate Scott's allegations.

(3) Nicole Broadway was a sales representative for OmniTech Institute in 2001 and 2002, reporting to Lester. According to Broadway, Lester called her into his office and closed the doors; asked for hugs; made comments on how she looked; and called her personal phone at night asking her to come to his house.  After several months, Broadway told the Human Resources officer, Melanie Cason, about Lester's behavior.  Cason told Lester about Broadway's complaint, after which Lester did not bother Broadway.  However, two or three months after Broadway complained, she was laid off, supposedly for lack of work.

(4)  Serena Edwards served as the Director of Education at OmniTech from March to July 2007.  Lester hugged Edwards when other

people were not around in a way that made her uncomfortable, placing his hands in the small of her back and pressing his body against hers. Lester invited Edwards to his home after her initial interview and hugged her there and also asked Edwards out on dates. Because Lester was the owner of the company, she did not report Lester's inappropriate conduct.

(5)     Ebony Lassiter, a student at OmniTech Institute, complained to Serena Edwards that Lester had tried to kiss her and that he hugged her in a creepy fashion, rubbing her back. In investigating Lassiter's complaint, Louis Cohan conducted interviews of employees with a recorder. When Edwards spoke with Cohan, she asked him to turn the recorder off. At that point, Edwards said, "I know he did it, I believe he did it, and he's going to get in trouble doing this kind of stuff, because he made passes at me." Although Edwards could not remember Cohan's exact wording, she recalled that Cohan said words to the effect of "he's been in trouble for this kind of stuff before, and I keep telling him."

(6)     Four months after Terrell was fired, Tuwanda Braxton, the Receptionist for OmniTech at that time, submitted a written statement about Lester's behavior towards her.

II.    Summary of Legal Claims

The following claims will be asserted at trial:

(1)    Tangible employment action sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended;

(2)    Hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended;

(3)    Retaliatory demotion in violation of Title VII of the Civil Rights Act of 1964, as amended;

(4)    Negligent retention and supervision in violation of Georgia state law (Defendant OmniTech only); and

(5)    Battery in violation of Georgia state law (Defendant Lester only).

III.   Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law

A.    *Statutes*:

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., 42 U.S.C. §1981a

O.C.G.A § 34-7-20

B.    *Illustrative case law*:

Burlington N. & SantaFe Ry. Co. v. White, 548 U.S. 53 (2006)

<u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75 (1998)

<u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998)

<u>Burlington Industries v. Ellerth</u>, 524 U.S. 742 (1998)

<u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 56 (1986)

<u>Reeves v. C.H. Robinson Worldwide, inc.</u>, 594 F.3d 798 (11th Cir. 2010)

<u>Cotton v. Cracker Barrel Old Country Store, Inc.</u>, 434 F.3d 1227 (11th Cir. 2006)

<u>Johnson v. Booker T. Washington Broadcasting Servs., Inc.</u>, 234 F.3d 501 (11th Cir. 2000)

<u>Stimpson v. City of Tuscaloosa</u>, 186 F.3d 1328 (11th Cir. 1999)

<u>Dees v. Johnson Controls World Servs., Inc.</u>, 168 F.3d 417 (11th Cir. 1999)

<u>Llampalas v. Mini-Circuits Lab, Inc.</u>, 163 F.3d 1236 (11th Cir. 1998)

<u>Metropolitan Atlanta Rapid Transit Authority v. Mosley</u>, 280 Ga.App. 486 (2006)

<u>Travis Pruitt & Associates, P.C. v. Hooper</u>, 277 Ga.App. 1 (2005)

<u>Southtrust Bank of Georgia v. Parker</u>, 226 Ga.App. 292 (1997)

<u>Trimble v. Circuit City Stores, Inc.</u>, 220 Ga.App. 498 (1996)

<u>Newsome v. Cooper-Wiss, Inc.</u>, 179 Ga. App. 671 (1986)

IV.    Elements of Damage under Federal Law

    A.    *Back pay and benefits:* Plaintiff is entitled to lost wages under Title VII from two years before she filed her EEOC charge until the time of trial.

    *Dollar amount claimed*:  To be determined at time of trial.

    *Authority*:

    42 U.S.C. § 2000e-5(g)

    Johnson v. Railway Express Agency, Inc., 421 U.S. 454 (1985)

    B.    *Compensatory damages*:  Plaintiff is entitled to compensatory damages for the nonpecuniary consequences of Defendants' unlawful treatment, including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Compensatory and punitive damages under Title VII are capped at $300,000 per aggrieved employee for employers that have more than 500 employees.

    *Dollar amount claimed*:  The amount of compensatory damages will be determined by the jury.  Plaintiff will seek the maximum permissible under law.

    *Authority*:  42 U.S.C. § 1981a(b)(3)

C.    *Punitive damages*:   Punitive damages are available as a remedy for violations of Title VII.   Punitive damages are appropriate where an employer acts with malice or with reckless indifference to an employee's federally protected rights, as demonstrated by either an evil intention to deprive the employee of his rights or a conscious indifference to those rights.   It is not necessary for a plaintiff to show egregious or outrageous discrimination to warrant a punitive damages award where an employer proceeds in the face of a perceived risk that its actions (or in this case, inactions) will violate federal law. Lack of ill will on the part of management is insufficient to bar punitive damages.   Punitive damages are awarded to punish wrongdoers and deter future wrongdoing.   There is no simple mathematical formula as to the ratio of punitive damages to compensatory damages.    The ratio may be higher if a particularly egregious act has caused only a small amount of economic damages; where an injury is hard to detect; or where the monetary value of non-economic harm is difficult to determine. Compensatory and punitive damages under Title VII

are capped at $300,000 per aggrieved employee for employers that have more than 500 employees.

*Dollar amount claimed*:  The amount of punitive damages will be determined by the jury.  Plaintiff will seek the maximum permissible under law.

*Authority*:

42 U.S.C. § 1981a(b)(1)

Kolstad v. American Dental Assoc., 527 U.S. 526 (1999)

Alexander v. Fulton County, 207 F.3d 1303, 1337 (11th Cir. 2000)

EEOC v. W&O, Inc., 213 F.3d 600, 611 (11th Cir. 2000)

D.   *Attorneys' fees and expenses*:  Prevailing Title VII plaintiffs are entitled to recovery of reasonable attorneys' fees and other costs of litigation.

*Dollar amount claimed*:  Plaintiff's counsel will provide an accounting of these costs post-judgment.

*Authority*:

42 U.S.C. § 2000e-5(k)

42 U.S.C. § 1981a

E.    *Prejudgment interest*:   Plaintiff is entitled to prejudgment interest on all sums recovered.

*Dollar amount claimed*:   To be determined depending on recovery.

*Authority*:

Castle v. Sangamo Weston, Inc., 837 F.2d 1550 (11th Cir. 1988)

Lindsey v. American Cast Iron Pipe Co., 810 F.2d 1094 (11th Cir. 1987)

F.    *Equitable relief:* Under Title VII, a plaintiff can receive front pay in lieu of reinstatement.  Courts have considered two years to be a reasonable front pay award.

*Dollar amount claimed*:  To be determined at trial.

*Authority*:

Pollard v. E.I. DuPont deNemours & Co., 532 U.S. 843 (2001)

Armstrong v. Charlotte County Bd. of Commrs., 273 F. Supp. 2d 1312 (M.D. Fla. 2003).

V.    Elements of Damage under State Law

For Defendant OmniTech's negligent supervision and retention of Defendant Lester, and for Defendant Lester's battery, Plaintiff seeks the following:

A.   *Compensatory damages*:  Compensatory damages are available for Plaintiff's state-law claims.

*Dollar amount claimed*:  The amount of compensatory damages will be determined by the jury.   Plaintiff will seek the maximum permissible under law.

*Authority*:

O.C.G.A. § 51-12-12

O.C.G.A. § 51-12-5

Overground Atlanta, Inc. v. Dunn, 191 Ga. App. 188 (1989)

B.   *Punitive damages*:  Punitive damages may be awarded only in tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.  They are limited to $250,000 for torts absent clear and convincing evidence of a specific intent to cause harm, in which case they are unlimited. Plaintiff will establish specific intent.

*Dollar amount claimed*:  The amount of punitive damages will be determined by the jury.  Plaintiff will seek the maximum permissible under law.

*Authority*:

O.C.G.A. § 51-12-5

O.C.G.A. § 51-12-5.1

<u>Aldworth Co., Inc. v. England</u>, 286 Ga. App. 1 (2007)

<u>Woodbury v. Whitmire</u>, 246 Ga. 349 (1980)

C.  *Attorneys' fees:*  Attorneys' fees and costs may also be available under state law.

*Dollar amount claimed*:  Plaintiff's counsel will provide an accounting of these costs post-judgment.

*Authority*:

O.C.G.A. § 13-6-11

<u>Woodbury v. Whitmire</u>, 246 Ga. 349 (1980)

Plaintiff relies on the general law of Georgia with regard to the doctrines of negligence, respondeat superior, vicarious liability, agency and assumption of duty.  <u>See</u>, <u>e.g.</u>, <u>Travis Pruitt & Associates, P.C. v. Hooper</u>, 277 Ga.App. 1 (2005).

VI.    Specification of Negligent Acts

The negligent acts of Defendant OmniTech about which Plaintiff complains under state law include retaining and failing to supervise Defendant Lester after it knew or should have known of his propensity to engage in sexual harassment of female employees.  In a cause of action for negligent retention, "an employer may be held liable only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff."  Metropolitan Atlanta Rapid Transit Authority v. Mosley, 280 Ga.App. 486, 489 (2006).

In addition, the negligent acts of Defendant OmniTech about which Plaintiff complains under federal law include its failure to prevent sexual harassment even though it had knowledge of Defendant Lester's propensity to engage in sexual harassment under the "alter ego" theory of liability.

**ATTACHMENT D**

**DEFENDANTS' OUTLINE OF THE CASE**

Defendant OTS, Inc. ("OTS") is an accredited adult education school, and Defendant Charlton Carlos Lester is the founder and president of OTS. Plaintiff Candace Terrell was referred to OTS by a friend of Mr. Lester's. Ms. Terrell was having serious marital problems and her husband was in prison following a felony conviction.  Ms. Terrell needed a job.  OTS employed Ms. Terrell beginning in March 2007 until June 2007.   In accordance with the OTS Employee Handbook, the first ninety (90) days of Ms. Terrell's employment with OTS was an "Orientation Period," during which the "employee and employer have the right to evaluate their compatibilities."  On day ninety-one (91) after her initial ninety (90) day Orientation Period, and at the recommendation of her then supervisor, Rene Alston, Ms. Terrell's employment with OTS was terminated due to various performance issues as well as Ms. Terrell's poor attitude.

Throughout most of her brief employment with OTS, Ms. Terrell was an unsatisfactory employee.  As an example, when Ms. Terrell started working for OTS, she was assigned to a position in the OTS business office, and while working in the business office, she contributed to OTS failing a

county building inspection during its expansion project.   On another occasion, Ms. Terrell refused to return Mr. Lester's keys to him after she absentmindedly took them home with her and even though Mr. Lester was locked out of his own school.    Additionally, on a separate occasion, when Mr. Lester criticized Ms. Terrell's job performance, Ms. Terrell became defensive and hysterical, yelling at Mr. Lester in the OTS office and calling him "the head nigger in charge."    Her outburst was inappropriate, unprofessional, and unacceptable.

However, and keeping in mind that Ms. Terrell was hired as a favor to a friend, rather than terminate Ms. Terrell at that time, OTS elected to provide her with another opportunity to prove her worth to the company and transferred Ms. Terrell to a different, but comparable, position in the Financial Aid Department.  Ms. Terrell's re-assignment to the Financial Aid Department was a transfer, not a demotion; her salary and benefits remained exactly the same.  Ms. Terrell's work load would have also remained the same, but Ms. Terrell essentially refused to do the work.

While working in the Financial Aid Department, Ms. Terrell was supervised by the Director of Financial Aid, Rene Alston.  According to Ms. Alston, Ms. Terrell's job performance in the Financial Aid Department,

particularly her attitude, was poor.  Specifically, Ms. Terrell exhibited an unwillingness to learn her new position.    Ultimately, Ms. Alston recommended that Ms. Terrell be discharged, and based upon this recommendation, Ms. Terrell's employment with OTS was terminated.

At no time during Ms. Terrell's employment with OTS did Mr. Lester ask her to dinner, make inappropriate and/or sexual comments towards or in the presence of Ms. Terrell, or make inappropriate and/or sexual gestures or touches towards or in the presence of Ms. Terrell.  Neither Mr. Lester, nor any other member of management at OTS, inappropriately touched or made advances toward Ms. Terrell.    Ms. Terrell was not subject tangible employment action sexual harassment, hostile work environment sexual harassment, or retaliation of any sort.

Moreover, throughout her employment with OTS, Plaintiff admittedly did not complain, formally or informally, that she was being subjected to any sort of sexual harassment or that she was in any way uncomfortable in the workplace.  In fact, it was only after Ms. Terrell had been terminated from OTS, while having drinks with another disgruntled and former employee of OTS, Serena Edwards, that Ms. Terrell "complained" about Mr. Lester.  While employed by OTS, Ms. Terrell failed to utilize the complaint

procedures established in the OTS Employee Handbook regarding discrimination and harassment in the workplace.  Ms. Terrell's allegations of sexual harassment, retaliation, negligent retentions and supervision, and battery are uncorroborated, unsubstantiated, and without merit.

## LIST OF DEFENSES

1.    Plaintiff fails to prove her case of tangible employment action sexual harassment.

2.    Plaintiff fails to prove her case of hostile work environment sexual harassment.

3.    Farragher/Ellerth Defense: Plaintiff did not complain, either formally or informally, regarding any alleged misconduct by Defendants while employed by OTS, and Plaintiff failed to avail herself of the procedures set forth in the OTS Employee Handbook regarding sexual harassment and discrimination.

4.    Plaintiff fails to prove her case of retaliation.

5.    Defendants' decision to transfer Plaintiff to the Financial Aid Department was for legitimate, non-discriminatory reasons.

6.    Plaintiff fails to demonstrate that Defendants' legitimate, non-discriminatory reasons for her transfer to the Financial Aid Department were pretext for discrimination.

7.    Plaintiff fails to prove her case of battery.

8.    Plaintiff fails to prove her case of negligent retention and supervision.

<u>LIST OF RELEVANT STATUTES AND OTHER LEGAL AUTHORITY</u>

1.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), <u>et</u> <u>seq</u>.

2.   Civil Rights Act of 1991, as amended;

3.   O.C.G.A. § 34-7-20;

4.   <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 118 S. Ct. 2257 (1998).

5.   <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S. Ct. 2275 (1998).

6.   <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 118 S. Ct. 998 (1998).

7.   <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 114 S. Ct. 367 (1993).

8.   <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 106 S. Ct. 2399 (1986).

9.   <u>Goldsmith v. Bagby Elevator Co.</u>, 513 F.3d 1261 (11th Cir., 2008).

10.  <u>Henderson v. Waffle House, Inc.</u>, 238 Fed. Appx. 499, 2007 WL 1841103 (11th Cir., 2007).

11.  <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262 (11th Cir., 2001).

12.  <u>Gupta v. Florida Board of Regents, et al.</u>, 212 F.3d 571 (11th Cir., 2000).

13.  <u>Chapman v. AI Transport</u>, 229 F.3d 1012 (11th Cir., 2000).

14.  <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238 (11th Cir., 1999).

15.  <u>Olmsted v. Taco Bell Corp.</u>, 141 F.3d 1457 (11th Cir., 1998).

16.     <u>Walker v. NationsBank of Fla. N.A.</u>, 53 F. 3d 1548 (11th Cir., 1995).

17.     <u>LeMaire v. La. Dep't of Transp. & Dev.</u>, 480 F.3d 383 (5th Cir., 2007).

Defendants reserve the right to supplement the foregoing list of defenses and relevant legal authority.

**ATTACHMENT E**

**STIPULATED FACTS**

1.   Defendant OTS, Inc. ("OTS") is an accredited adult education school.

2.   Defendant Charlton Carlos Lester is the founder and president of OTS.

3.   OTS has owned and operated OmniTech Institute, an adult education school, since 2001.

4.   On March 1, 2007, Plaintiff Candace Terrell applied for a position with OTS.

5.   Plaintiff applied for a position with OTS at the suggestion of a mutual acquaintance of Plaintiff and Mr. Lester.

6.   After conducting an initial interview of Plaintiff and at the recommendation of their mutual acquaintance, OTS hired Plaintiff.

7.   On June 4, 2007, Terrell's employment with OTS was terminated.

8.   On or about September 6, 2007, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission.

9.      On December 9, 2008, the EEOC issued a Right-To-Sue Letter to

Plaintiff.

10.     Plaintiff filed the instant lawsuit on March 6, 2009, alleging

tangible employment sexual harassment, hostile work environment

sexual harassment, retaliation, and various state law claims.

**ATTACHMENT F-1**

**<u>PLAINTIFF'S WITNESS LIST</u>**

The following individuals WILL be present at trial:

1.      Candace Terrell

        982 Forest Glen

        Jonesboro, GA 30238

The following individuals MAY be present at trial:

1.      Nicki Jenkins
        2657 Lenox Road, NE, Unit F-79
        Atlanta, GA 30324

2.      Serena Edwards
        1224 Sharonbrook Drive
        Twinsburg, Ohio 44087

3.      Renee Alston
        4319 Covington Highway, Suite 202
        Decatur, GA 30035

4.      Nicole Broadway
        3606 Wind River Court #57
        Tucker, GA 30084

5.      Maxanna Scott
        13650 Marina Pointe Drive, Unit 307
        Marina Del Ray, CA 90292

6.      Ebony Lassiter
        Current address unknown

7.    Tuwanda Braxton
      18 Meadowood Way
      Lithonia, GA 30038

8.    Melanie Cason
      5280 Omalley Lane
      Stone Mountain, GA 30088

9.    Rether White
      982 Forest Glen
      Jonesboro, GA 30238

10.   Louis Cohan
      3405 Piedmont Rd.
      Suite 300
      Atlanta, GA 30305

11.   Charlton Carlos Lester
      4319 Covington Highway, Suite 202
      Decatur, GA 30035

12.   Christopher Rowell
      686 Wendan Drive
      Decatur, GA 30033

Plaintiff reserves the right to call as a witness at trial any individual(s) identified by Defendants in Attachment "F-2."  Plaintiff further reserves the right to call any other witness at trial for rebuttal or impeachment purposes.

**ATTACHMENT F-1**

**<u>DEFENDANTS' WITNESS LIST</u>**

Defendants will have present at trial the following witnesses:

1.     Charlton Carlos Lester
       4319 Covington Highway, Suite 202
       Decatur, GA 30035

Defendants may have present at trial the following witnesses:

1.     Rene Alston
       9303 Wesley Providence Parkway
       Lithonia, Georgia 30038

2.     Nicki Jenkins
       2657 Lenox Road, NE
       Unit F-79
       Atlanta, Georgia 30324
       (404) 869-6599

3.     Nicole Broadway
       3606 Wind River Court, #57
       Tucker, Georgia 30084

4.     Serena Edwards
       1224 Sharonbrook Drive
       Twinsburg, Ohio 44087

5.     Saleim Hakim
       (313) 770-2713

6.     Eugene Sarantchouk

7.     Mary Vickers
       3434 Hamlin Sq.
       Atlanta, Georgia 30331

8.    Linda Broxton
      3568 Eaglerock Drive
      Atlanta, Georgia 30340

9.    Kimberly Wells
      419 Gentry's Walk
      Atlanta, Georgia 30341

10.   Tracy Cook
      5339 Omalley Lane
      Stone Mountain, Georgia  30088
      (404) 229-5399

11.   Ian Hodge
      6164 Birch Row Drive
      East Lansing, Michigan  48823
      (419) 606-9595

12.   Pennie McBride
      102 Linkwood Road
      Atlanta, Georgia 30311

13.   Maple Morganfield
      2791 Hillvale Cove Drive
      Lithonia, Georgia 30058
      (770) 323-3992

14.   Sherree Adams
      1717 Log Cabin Lane
      Alpharetta, Georgia 30004

15.   Clinson Valley
      5351 Knights Landing
      Ellenwood, Georgia 30294

16.   Shawn Abramson
      1561 Log Cabin Lane
      Lawrenceville, Georgia 300045

17.    Pragna Sanghvi
       4020 Brantley Drive
       Austell, Georgia 30106

18.    Catresa  Lyons

19.    Ebony Lassiter
       6206 Turnberry Place
       Lithonia, Georgia  30058


       Defendants reserve the right to call as a witness at trial any individual(s) identified by Plaintiff in Attachment "F-1."  Defendants further reserve the right to call any other witness at trial for rebuttal or impeachment purposes.

## ATTACHMENT G-1

## <u>PLAINTIFF'S PROPOSED EXHIBITS</u>

| Exh. No. | Bates Begin | Bates End | Document |
|---|---|---|---|
| 1. | OTS-031 | OTS-035 | Candace Terrell's Application to OTS |
| 2. | OTS-027 | OTS-028 | Candace Terrell's Payroll Record |
| 3. | OTS-123 | OTS-124 | Email from Lester to Terrell dated 4/9/2007 |
| 4. | OTS-135 | | Email from Lester to Terrell dated 4/9/2007 |
| 5. | OTS-106 | | Email about management team meeting dated 4/10/2007 |
| 6. | OTS-113 | OTS-115 | Emails between Terrell and Lester about oxygen tanks dated 4/10/2007 |
| 7. | OTS-139 | OTS-140 | Email from Terrell to Lester about status of departments dated 4/10/2007 |
| 8. | OTS-057 | OTS-059 | Email regarding Terrell paying independent contractors dated 4/25/2007 |
| 9. | OTS-200 | OTS-202 | Email from Terrell to Lester about accounts payable dated 4/26/2007 |
| 10. | OTS-077 | | Email from Terrell regarding completed tasks dated 4/26/2007 at 9:05am |
| 11. | OTS-198 | | Email from Terrell regarding completed tasks dated 4/26/2007 at 6:47pm |
| 12. | OTS-193 | OTS-197 | Email from Terrell to Lester re: Starwood hotels dated 4/27/2007 |
| 13. | OTS-095 | OTS-097 | Email regarding locks on door dated 5/1/2007 at 4:33pm |
| 14. | OTS-207 | OTS-208 | Email from Lester to Terrell dated 5/1/2007 at 11:24 pm |
| 15. | OTS-211 | | Email from Lester to Terrell dated |

| | | | 5/02/2007 at 5:32 am |
|---|---|---|---|
| 16. | OTS-209 | | Email from Terrell to Lester dated 5/2/2007 at 9:32am |
| 17. | OTS-212 | OTS-213 | Email from Lester to Terrell dated 5/02/2007 at 11:52 am |
| 18. | OTS-083 | OTS-089 | Email from Terrell to Lester dated 5/02/2007 at 12:25 pm |
| 19. | OTS-082 | | Email from Terrell to Lester dated 5/02/2007 at 6:23pm |
| 20. | OTS-067 | OTS-069 | Email chain between Terrell and Lester regarding teacher pay checks |
| 21. | OTS-146 | OTS-158 | Email regarding performance measurements |
| 22. | OTS-021 | OTS-022 | Terrell's EEOC Charge dated 9/6/2007 |
| 23. | OTS-234 | OTS-240 | Maxanna Scott Complaint dated 7/17/2002 |
| 24. | OTS-278 | | Braxton handwritten complaint dated 10/30/2007 |
| 25. | OTS-277 | | Braxton typed complaint dated 10/31/2007 |
| 26. | OTS-275 | OTS-276 | Email regarding Braxton complaint dated November 7, 2007 |
| 27. | | | Maxanna Scott Deposition dated October 9, 2002 |
| 28. | | | Serena Edwards Deposition dated December 21, 2009 |
| 29. | | | Terrell's 2007 W-2 |
| 30. | | | Terrell's 2008 W-2 |
| 31. | | | Terrell's 2009 W-2 |
| 32. | OTS-007 | OTS-018 | Employee Handbook |
| 33. | | | Defendant Lester's Objections and Responses to Plaintiff's First Interrogatories |
| 34. | OTS-210 | | Email from Lester to staff dated 5/21/2007 |
| 35. | OTS-029 | OTS-030 | Terrell's Resume |

| 36. | OTS-131 | | Email from Terrell to Management Team dated 4/12/07 |
| 37. | OTS-125 | | Email from Terrell to Management Team dated 4/17/07 |

Plaintiff further identifies as potential exhibits each and every document or thing identified by Defendants in Attachment G-2.

## DEFENDANTS' OBJECTIONS TO PLAINTIFF'S EXHIBITS

| Exhibit No. | Description | Objection |
|---|---|---|
| 22 | Terrell's EEOC Charge | Irrelevant, Cumulative because the Parties stipulated to the fact that Terrell timely filed a Charge with the EEOC. |
| 23 | Maxanna Scott Complaint dated 7/17/2002 | Irrelevant, Hearsay, Prejudicial, Not Probative |
| 24 | Braxton handwritten complaint dated 10/30/2007 | Irrelevant, Hearsay, Prejudicial, Not Probative |
| 25 | Braxton typed complaint dated 10/31/2007 | Irrelevant, Hearsay, Prejudicial, Not Probative |
| 26 | Email regarding Braxton complaint dated November 7, 2007 | Irrelevant, Hearsay, Prejudicial, Not Probative |
| 27 | Maxanna Scott Deposition dated October 9, 2002 | Irrelevant, Hearsay, Prejudicial, Not Probative |
| 28 | Serena Edwards Deposition dated December 21, 2009 | Irrelevant, Hearsay, Prejudicial, Not Probative |
| 33 | Defendant Lester's Objections and Responses to Plaintiff's First Interrogatories | Defendants are unable to object to this proposed exhibit at this time as it is unclear as to how or why these materials would be used at trial. |

## ATTACHMENT G-2

## <u>DEFENDANTS' PROPOSED EXHIBITS</u>

| Exhibit No. | Bates No. | Description |
|---|---|---|
| 1 | | Plaintiff's Complaint |
| 2 | | Defendants' Affirmative Defenses and Answer |
| 3 | | Plaintiff's Initial Disclosures |
| 4 | | Defendants' Initial Disclosures |
| 5 | | Plaintiff's Objections and Responses to Defendants' First Interrogatories |
| 6 | | Plaintiff's Objections and Responses to Defendants' First Request for Production of Documents |
| 7 | | Defendant Charlton Carlos Lester's Objections and Responses to Plaintiff's First Interrogatories |
| 8 | | Defendant Charlton Carlos Lester's First Supplemental Objections and Responses to Plaintiff's First Interrogatories |
| 9 | | Defendant Charlton Carlos Lester's Second Supplemental Objections and Responses to Plaintiff's First Interrogatories |
| 10 | | Defendant Charlton Carlos Lester's Third Supplemental Objections and Responses to Plaintiff's First Interrogatories |
| 11 | | Defendant Charlton Carlos Lester's Objections and Responses to Plaintiff's First Request for Production of Documents |
| 12 | | Defendant OTS, Inc.'s Objections and Responses to Plaintiff's First Request for Production of Documents |
| 13 | | Defendant OTS, Inc.'s Objections and Responses to Plaintiff's First Request for |

| | | Admissions. |
|---|---|---|
| 14 | | Defendant OTS, Inc.'s First Supplemental Responses to Plaintiff's First Request for Admissions |
| 15 | | Plaintiff's Objections and Responses to Defendants' Second Interrogatories |
| 16 | | Plaintiff's Objections and Responses to Defendants' Second Request for Production of Documents |
| 17 | | Affidavit of Eugene Sarantchouk |
| 18 | | Card to Lester signed by Maxanna Scott* |
| 19 | OTS 000031-000035 | Terrell's Application for Employment |
| 20 | OTS 000029-000030 | Terrell's Resume Submitted to OTS |
| 21 | OTS 000007-000018 | OTS Employee Handbook |
| 22 | OTS 000006 | Receipt of Employee Handbook Signed by Terrell |
| 23 | OTS 000092-000093 | Email from Lester to Terrell dated 05.01.2007 |
| 24 | OTS 000020 | Notice of Charge of Discrimination |
| 25 | OTS 000001 | Letter from Farahany to Lester dated 06.26.07 |
| 26 | OTS 00002-000003 | Letter from Farahany to Cohan dated 08.22.07 |
| 27 | OTS 000004 | Email from Cook to Lester dated 12.13.07 |
| 28 | OTS 000027-000028 | Payroll Documents for Terrell |
| 29 | OTS 000036-000040 | Restrictive Covenant Agreement signed by Terrell |
| 30 | OTS 000041 | Direct Deposit Authorization signed by Terrell |
| 31 | OTS 000042 | W-4 Completed and Signed by Terrell |
| 32 | OTS 000043 | Employee Witholding Allowance Certificate Completed and Signed by Terrell |

| 33 | OTS 000044-000046 | Employee Eligibility Verification Completed and Signed by Terrell |
|---|---|---|
| 34 | OTS 000047 | Copy of Terrell's MD Driver's License and SSN Card |
| 35 | OTS 000048 | Email from Ford to Cook dated 06.28.07 |
| 36 | OTS 000051 | Email from Terrell to Lester dated 04.26.07 |
| 37 | OTS 000052 | Email from Terrell to Lester dated 04.26.07 |
| 38 | OTS 000053 | Email from Terrell to Lester dated 04.26.07 |
| 39 | OTS 000054 | Email from Terrell to Lester dated 04.26.07 |
| 40 | OTS 000055 | Email from Terrell to Lester dated 04.25.07 |
| 41 | OTS 000056 | Email from Terrell to Lester dated 04.25.07 |
| 42 | OTS 000057-000059 | Email from Terrell to Lester dated 04.25.07 |
| 43 | OTS 000060 | Email from Terrell to Lester dated 04.25.07 |
| 44 | OTS 000061 | Email from Terrell to Lester dated 04.24.07 |
| 45 | OTS 000062-000063 | Email from Terrell to Lester dated 04.24.07 |
| 46 | OTS 000064 | Email from Terrell to Lester dated 04.24.07 |
| 47 | OTS 000065-000066 | Email from Terrell to Lester dated 05.03.07 with Attachment |
| 48 | OTS 000067-000068 | Email from Terrell to Lester dated 05.03.07 |
| 49 | OTS 000069 | Email from Terrell to Lester dated 05.03.07 |
| 50 | OTS 000070-000074 | Email from Terrell to Lester dated 05.03.07 with Attachment |
| 51 | OTS 000075-000076 | Email from Terrell to Lester dated 05.03.07 with Attachment |
| 52 | OTS 000077 | Email from Terrell to Lester dated 04.26.07 |
| 53 | OTS 000078 | Email from Terrell to Lester dated 05.02.07 |
| 54 | OTS 000079 | Email from Terrell to Lester dated 05.02.07 |
| 55 | OTS 000080-000081 | Email from Terrell to Lester dated 05.02.07 with Attachment |
| 56 | OTS 000082 | Email from Terrell to Lester dated 05.02.07 |
| 57 | OTS 000083-000089 | Email from Terrell to Lester dated 05.02.07 with Attachment |
| 58 | OTS 000090 | Email from Terrell to Lester dated 05.02.07 |

| 59 | OTS 000091-000093 | Email from Terrell to Lester dated 05.02.07 |
|----|-------------------|---------------------------------------------|
| 60 | OTS 000094 | Email from Lester to Terrell dated 05.01.07 |
| 61 | OTS 000095-000096 | Email Terrell to Alston dated 05.01.07 |
| 62 | OTS 000097 | Email from Terrell to Lester dated 05.01.07 |
| 63 | OTS 000098 | Email from Lester to Terrell dated 05.01.07 |
| 64 | OTS 000099-000100 | Email from Terrell to Best Print and Design dated 05.03.07 with Attachment |
| 65 | OTS 000101 | Email from Terrell to Lester dated 05.03.07 |
| 66 | OTS 000102 | Email from Terrell to Lester dated 05.02.07 |
| 67 | OTS 000103 | Email from Terrell to Lester dated 05.01.07 |
| 68 | OTS 000104 | Email from Terrell to Lester dated 05.01.07 |
| 69 | OTS 000105 | Email from Terrell to Lester dated 05.01.07 |
| 70 | OTS 000106 | Email from Terrell to Morganfield, et al. dated 04.10.07 |
| 71 | OTS 000107-000108 | Email from Terrell to Lester dated 04.10.07 |
| 72 | OTS 000109-000110 | Email from Terrell to Lester dated 04.10.07 |
| 73 | OTS 000111 | Email from Terrell to Lester dated 04.10.07 |
| 74 | OTS 000112 | Email from Terrell to Lester dated 04.10.07 |
| 75 | OTS 000113-000114 | Email from Terrell to Lester dated 04.10.07 |
| 76 | OTS 000115 | Email from Terrell to Lester dated 04.10.07 |
| 77 | OTS 000116 | Email from Terrell to Lester dated 05.02.07 |
| 78 | OTS 000117 | Email from Terrell to Lester dated 04.09.07 |
| 79 | OTS 000118 | Email from Terrell to Lester dated 04.09.07 |
| 80 | OTS 000119 | Email from Terrell to Lester dated 04.09.07 |
| 81 | OTS 000120 | Email from Terrell to Lester dated 04.09.07 |
| 82 | OTS 000121-000122 | Email from Terrell to Lester dated 04.09.07 |
| 83 | OTS 000123-000124 | Email from Terrell to Lester dated 04.09.07 |
| 84 | OTS 000126 | Email from Terrell to Lester dated 04.17.07 |
| 85 | OTS 000127 | Email from Terrell to Lester dated 04.17.07 |
| 86 | OTS 000128 | Email from Terrell to Lester dated 04.13.07 |

| 87 | OTS 000129 | Email from Terrell to Lester dated 04.13.07 |
|---|---|---|
| 88 | OTS 000130 | Email from Terrell to Lester dated 04.12.07 |
| 89 | OTS 000131 | Email from Terrell to Adams, et al. dated 04.12.07 |
| 90 | OTS 000132 | Email from Terrell to Lester dated 04.11.07 |
| 91 | OTS 000133 | Email from Terrell to Lester dated 04.11.07 |
| 92 | OTS 000134 | Email from Terrell to Lester dated 04.11.07 |
| 93 | OTS 000135 | Email from Terrell to Lester dated 04.09.07 |
| 94 | OTS 000136 | Email from Terrell to Lester dated 04.11.07 |
| 95 | OTS 000137 | Email from Terrell to Lester dated 04.11.07 |
| 96 | OTS 000138 | Email from Terrell to Lester dated 04.11.07 |
| 97 | OTS 000139-000140 | Email from Terrell to Lester dated 04.10.07 with Attachment |
| 98 | OTS 000141 | Email from Terrell to Morganfield, et al. dated 04.10.07 |
| 99 | OTS 000142-0000143 | Email from Terrell to Alston dated 05.03.07 |
| 100 | OTS 000144 | Email from Terrell to Lester dated 05.03.07 |
| 101 | OTS 000145 | Email from Terrell to Alston dated 05.03.07 |
| 102 | OTS 000146-0000171 | Email from Terrell to Lester dated 05.03.07 with Attachment |
| 103 | OTS 000172 | Email from Terrell to Lester dated 05.03.07 |
| 104 | OTS 000173-000174 | Email from Terrell to Lester dated 05.03.07 with Attachment |
| 105 | OTS 000175 | Email from Terrell to Lester dated 05.01.07 |
| 106 | OTS 0000176-000177 | Email from Terrell to Lester dated 04.30.07 |
| 107 | OTS 0000178 | Email from Terrell to Lester dated 04.30.07 |
| 108 | OTS 0000179-000188 | Email from Terrell to Lester dated 04.30.07 with Attachment |
| 109 | OTS 000189-000190 | Email from Terrell to Lester dated 04.30.07 |
| 110 | OTS 000191-000192 | Email from Terrell to Edwards dated 04.30.07 with Attachment |
| 111 | OTS 000193-000194 | Email from Terrell to Lester dated 04.27.07 with Attachment |

| 112 | OTS 000195 | Email from Terrell to Lester dated 04.26.07 |
|---|---|---|
| 113 | OTS 000196-000197 | Email from Terrell to Lester dated 04.30.07 |
| 114 | OTS 000198 | Email from Terrell to Lester dated 04.26.07 |
| 115 | OTS 000199 | Email from Terrell to Lester dated 04.26.07 |
| 116 | OTS 000200-000202 | Email from Terrell to Lester dated 04.26.07 with Attachment |
| 117 | OTS 000205-000206 | Email from Lester to Terrell dated 05.01.07 |
| 118 | OTS 000210 | Email from Lester to Valley, et al. dated 05.21.07 |
| 119 | OTS 000211 | Email from Lester to Terrell dated 05.02.07 |
| 120 | OTS 000212-000213 | Email from Lester to Terrell dated 05.02.07 |
| 121 | OTS 000215 | Letter from RCD Atlanta, Inc. to Terrell dated 01.11.08 |
| 122 | OTS 000216 | W-4 Completed and Signed by Terrell RE RCD Atlanta |
| 123 | OTS 000217-000218 | Email from Nehrebecky to Terrell dated 01.10.08 |
| 124 | OTS 000219 | Employee's Witholding Allowance Certificate Completed & Signed by Terrell RE RCD Atlanta |
| 125 | OTS 000220 | Letter from AccountTemps to Nehrebecky dated 01.15.08 |
| 126 | OTS 000221 | I-9 Completed and Signed by Terrell RE RCD Atlanta |
| 127 | OTS 000222 | Terrell's MD Driver's License and SSN Card |
| 128 | OTS 000223 | Background Verification Report on Terrell |
| 129 | OTS 000224-000226 | Fax from Nehrebecky to Loss Prevention Systems dated 01.22.08 |
| 130 | OTS 000227 | Personal Information Sheet RE RCD Atlanta |
| 131 | OTS 000228 | Acknowledgement of Receipt of Employee Handbook signed by Terrell RE RCD Atlanta |

| 132 | OTS 000229-230 | Resume of Terrell submitted to RCD Atlanta |
| --- | --- | --- |
| 133 | OTS 000231-000232 | Letter from AccountTemps to Smith dated 07.24.07 |
| 134 | | Handwritten Notes by Terrell |
| 135 | | Complaint filed by Maxanna Scott filed in Northern District of Georgia on 07.17.02* |
| 136 | | First Amended Complaint by Maxanna Scott filed in the Northern District of Georgia dated 02.26.03* |
| 137 | | Magistrate Judge's Report and Recommendation in Maxanna Scott Case entered on 03.24.04* |
| 138 | | Order on Summary Judgment in Maxanna Scott Case entered on 09.02.04* |
| 139 | | Affidavit of Maxanna Scott* |
| 140 | | Affidavit of Gregory Turner* |
| 141 | | Affidavit of Kenneth Norris* |
| 142 | | Affidavit of Wendel Brown* |
| 143 | | Affidavit of Anita Conley* |
| 144 | | Affidavit of Sheri Adams* |
| 145 | | Affidavit of Nicole Broadway* |
| 146 | | Affidavit of Melanie Cason* |
| 147 | | Affidavit of Nicole Calloway* |
| 148 | | Affidavit Sharon Daughtrey* |
| 149 | | Affidavit of Cynthia Jolley* |
| 150 | | Complaint filed by Terrell against Defendants in State Court of DeKalb County on 12.07.07 |
| 151 | | Dismissal of State Court Complaint against Defendants filed by Terrell on 06.19.07 |

* The foregoing exhibits noted with an asterisk are included in Defendants' Exhibit List in an abundance of caution in the event the Court allows evidence regarding Ms. Maxanna Scott's previous and unrelated

claims against Defendants.    While Defendants vehemently oppose the introduction of any evidence from Ms. Scott or regarding her prior allegations against Defendants, should such evidence be allowed by the Court, Defendants would rely upon these exhibits to rebut and refute same.

Defendants further identify as potential exhibits each and every document or thing identified by Plaintiff in Attachment G-1.

## PLAINTIFF'S OBJECTIONS TO DEFENDANTS' PROPOSED EXHIBITS

| Exhibit No. | Description | Objections |
|---|---|---|
| 1 | Plaintiff's Complaint | Pleadings are not evidence. |
| 2 | Defendants' Affirmative Defenses and Answer | Pleadings are not evidence. |
| 3 | Plaintiff's Initial Disclosures | Pleadings are not evidence. |
| 4 | Defendants' Initial Disclosures | Pleadings are not evidence. |
| 5 | Plaintiff's Objections and Responses to Defendants' First Interrogatories | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 6 | Plaintiff's Objections and Responses to Defendants' First Request for Production of Documents | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 7 | Defendant Charlton Carlos Lester's Objections and Responses to Plaintiff's First Interrogatories | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 8 | Defendant Charlton Carlos Lester's First Supplemental Objections and Responses to Plaintiff's First Interrogatories | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 9 | Defendant Charlton Carlos Lester's Second Supplemental Objections and Responses to Plaintiff's First Interrogatories | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 10 | Defendant Charlton Carlos Lester's | Plaintiff is unable to object |

|  | Third Supplemental Objections and Responses to Plaintiff's First Interrogatories | to object at this time as it is unclear how or why these materials would be used at trial. |
|---|---|---|
| 11 | Defendant Charlton Carlos Lester's Objections and Responses to Plaintiff's First Request for Production of Documents | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 12 | Defendant OTS, Inc.'s Objections and Responses to Plaintiff's First Request for Production of Documents | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 13 | Defendant OTS, Inc.'s Objections and Responses to Plaintiff's First Request for Admissions. | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 14 | Defendant OTS, Inc.'s First Supplemental Responses to Plaintiff's First Request for Admissions | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 15 | Plaintiff's Objections and Responses to Defendants' Second Interrogatories | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 16 | Plaintiff's Objections and Responses to Defendants' Second Request for Production of Documents | Plaintiff is unable to object to object at this time as it is unclear how or why these materials would be used at trial. |
| 17 | Affidavit of Eugene Sarantchouk | Inadmissible hearsay. |
| 18 | Card to Lester signed by Maxanna Scott | Irrelevant. |

| 19 | Terrell's Application for Employment | |
| 20 | Terrell's Resume Submitted to OTS | |
| 21 | OTS Employee Handbook | Irrelevant given absence of Faragher-Ellerth defense. |
| 22 | Receipt of Employee Handbook Signed by Terrell | Irrelevant given absence of Faragher-Ellerth defense. |
| 23 | Email from Lester to Terrell dated 05.01.2007 | |
| 24 | Notice of Charge of Discrimination | Irrelevant, cumulative because the parties stipulated to the fact that Terrell timely filed a charge at the EEOC. |
| 25 | Letter from Farahany to Lester dated 06.26.07 | Irrelevant, not probative. |
| 26 | Letter from Farahany to Cohan dated 08.22.07 | Irrelevant, not probative. |
| 27 | Email from Cook to Lester dated 12.13.07 | Irrelevant, not probative, hearsay. |
| 28 | Payroll Documents for Terrell | |
| 29 | Restrictive Covenant Agreement signed by Terrell | Irrelevant. |
| 30 | Direct Deposit Authorization signed by Terrell | Irrelevant. |
| 31 | W-4 Completed and Signed by Terrell | Irrelevant. |
| 32 | Employee Witholding Allowance Certificate Completed and Signed by Terrell | Irrelevant. |
| 33 | Employee Eligibility Verification Completed and Signed by Terrell | Irrelevant. |
| 34 | Copy of Terrell's MD Driver's License and SSN Card | Irrelevant, violates court rules. |
| 35 | Email from Ford to Cook dated 06.28.07 | |

| 36 | Email from Terrell to Lester dated 04.26.07 | |
| 37 | Email from Terrell to Lester dated 04.26.07 | |
| 38 | Email from Terrell to Lester dated 04.26.07 | |
| 39 | Email from Terrell to Lester dated 04.26.07 | |
| 40 | Email from Terrell to Lester dated 04.25.07 | |
| 41 | Email from Terrell to Lester dated 04.25.07 | |
| 42 | Email from Terrell to Lester dated 04.25.07 | |
| 43 | Email from Terrell to Lester dated 04.25.07 | |
| 44 | Email from Terrell to Lester dated 04.24.07 | |
| 45 | Email from Terrell to Lester dated 04.24.07 | |
| 46 | Email from Terrell to Lester dated 04.24.07 | |
| 47 | Email from Terrell to Lester dated 05.03.07 with Attachment | |
| 48 | Email from Terrell to Lester dated 05.03.07 | |
| 49 | Email from Terrell to Lester dated 05.03.07 | |
| 50 | Email from Terrell to Lester dated 05.03.07 with Attachment | |
| 51 | Email from Terrell to Lester dated 05.03.07 with Attachment | |
| 52 | Email from Terrell to Lester dated 04.26.07 | |
| 53 | Email from Terrell to Lester dated 05.02.07 | |
| 54 | Email from Terrell to Lester dated | |

| | | |
|---|---|---|
| | 05.02.07 | |
| 55 | Email from Terrell to Lester dated 05.02.07 with Attachment | |
| 56 | Email from Terrell to Lester dated 05.02.07 | |
| 57 | Email from Terrell to Lester dated 05.02.07 with Attachment | |
| 58 | Email from Terrell to Lester dated 05.02.07 | |
| 59 | Email from Terrell to Lester dated 05.02.07 | |
| 60 | Email from Lester to Terrell dated 05.01.07 | |
| 61 | Email from Terrell to Alston dated 05.01.07 | |
| 62 | Email from Terrell to Lester dated 05.01.07 | |
| 63 | Email from Lester to Terrell dated 05.01.07 | |
| 64 | Email from Terrell to Best Print and Design dated 05.03.07 with Attachment | |
| 65 | Email from Terrell to Lester dated 05.03.07 | |
| 66 | Email from Terrell to Lester dated 05.02.07 | |
| 67 | Email from Terrell to Lester dated 05.01.07 | |
| 68 | Email from Terrell to Lester dated 05.01.07 | |
| 69 | Email from Terrell to Lester dated 05.01.07 | |
| 70 | Email from Terrell to Morganfield, et al. dated 04.10.07 | |
| 71 | Email from Terrell to Lester dated 04.10.07 | |
| 72 | Email from Terrell to Lester dated | |

| | | |
|---|---|---|
| | 04.10.07 | |
| 73 | Email from Terrell to Lester dated 04.10.07 | |
| 74 | Email from Terrell to Lester dated 04.10.07 | |
| 75 | Email from Terrell to Lester dated 04.10.07 | |
| 76 | Email from Terrell to Lester dated 04.10.07 | |
| 77 | Email from Terrell to Lester dated 05.02.07 | |
| 78 | Email from Terrell to Lester dated 04.09.07 | |
| 79 | Email from Terrell to Lester dated 04.09.07 | |
| 80 | Email from Terrell to Lester dated 04.09.07 | |
| 81 | Email from Terrell to Lester dated 04.09.07 | |
| 82 | Email from Terrell to Lester dated 04.09.07 | |
| 83 | Email from Terrell to Lester dated 04.09.07 | |
| 84 | Email from Terrell to Lester dated 04.17.07 | |
| 85 | Email from Terrell to Lester dated 04.17.07 | |
| 86 | Email from Terrell to Lester dated 04.13.07 | |
| 87 | Email from Terrell to Lester dated 04.13.07 | |
| 88 | Email from Terrell to Lester dated 04.12.07 | |
| 89 | Email from Terrell to Adams, et al. dated 04.12.07 | |
| 90 | Email from Terrell to Lester dated 04.11.07 | |

| 91 | Email from Terrell to Lester dated 04.11.07 | |
|----|---------------------------------------------|---|
| 92 | Email from Terrell to Lester dated 04.11.07 | |
| 93 | Email from Terrell to Lester dated 04.09.07 | |
| 94 | Email from Terrell to Lester dated 04.11.07 | |
| 95 | Email from Terrell to Lester dated 04.11.07 | |
| 96 | Email from Terrell to Lester dated 04.11.07 | |
| 97 | Email from Terrell to Lester dated 04.10.07 with Attachment | |
| 98 | Email from Terrell to Morganfield, et al. dated 04.10.07 | |
| 99 | Email from Terrell to Alston dated 05.03.07 | |
| 100 | Email from Terrell to Lester dated 05.03.07 | |
| 101 | Email from Terrell to Alston dated 05.03.07 | |
| 102 | Email from Terrell to Lester dated 05.03.07 with Attachment | |
| 103 | Email from Terrell to Lester dated 05.03.07 | |
| 104 | Email from Terrell to Lester dated 05.03.07 with Attachment | |
| 105 | Email from Terrell to Lester dated 05.01.07 | |
| 106 | Email from Terrell to Lester dated 04.30.07 | |
| 107 | Email from Terrell to Lester dated 04.30.07 | |
| 108 | Email from Terrell to Lester dated 04.30.07 with Attachment | |
| 109 | Email from Terrell to Lester dated | |

| | 04.30.07 | |
|---|---|---|
| 110 | Email from Terrell to Edwards dated 04.30.07 with Attachment | |
| 111 | Email from Terrell to Lester dated 04.27.07 with Attachment | |
| 112 | Email from Terrell to Lester dated 04.26.07 | |
| 113 | Email from Terrell to Lester dated 04.30.07 | |
| 114 | Email from Terrell to Lester dated 04.26.07 | |
| 115 | Email from Terrell to Lester dated 04.26.07 | |
| 116 | Email from Terrell to Lester dated 04.26.07 with Attachment | |
| 117 | Email from Lester to Terrell dated 05.01.07 | |
| 118 | Email from Lester to Valley, et al. dated 05.21.07 | |
| 119 | Email from Lester to Terrell dated 05.02.07 | |
| 120 | Email from Lester to Terrell dated 05.02.07 | |
| 121 | Letter from RCD Atlanta, Inc. to Terrell dated 01.11.08 | |
| 122 | W-4 Completed and Signed by Terrell RE RCD Atlanta | Irrelevant, violates court rules. |
| 123 | Email from Nehrebecky to Terrell dated 01.10.08 | |
| 124 | Employee's Witholding Allowance Certificate Completed & Signed by Terrell RE RCD Atlanta | Irrelevant, violates court rules. |
| 125 | Letter from AccountTemps to Nehrebecky dated 01.15.08 | |
| 126 | I-9 Completed and Signed by Terrell RE RCD Atlanta | Irrelevant, violates court rules. |
| 127 | Terrell's MD Driver's License and | Irrelevant, violates court |

|  | SSN Card | rules. |
|---|---|---|
| 128 | Background Verification Report on Terrell | Irrelevant, violates court rules. |
| 129 | Fax from Nehrebecky to Loss Prevention Systems dated 01.22.08 | Irrelevant, violates court rules. |
| 130 | Personal Information Sheet RE RCD Atlanta | Irrelevant, violates court rules. |
| 131 | Acknowledgement of Receipt of Employee Handbook signed by Terrell RE RCD Atlanta | Irrelevant. |
| 132 | Resume of Terrell submitted to RCD Atlanta | Irrelevant. |
| 133 | Letter from AccountTemps to Smith dated 07.24.07 |  |
| 134 | Handwritten Notes by Terrell |  |
| 135 | Complaint filed by Maxanna Scott filed in Northern District of Georgia on 07.17.02 |  |
| 136 | First Amended Complaint by Maxanna Scott filed in the Northern District of Georgia dated 02.26.03 |  |
| 137 | Magistrate Judge's Report and Recommendation in Maxanna Scott Case entered on 03.24.04 | Irrelevant, not probative, undue prejudice. |
| 138 | Order on Summary Judgment in Maxanna Scott Case entered on 09.02.04 | Irrelevant, not probative, undue prejudice. |
| 139 | Affidavit of Maxanna Scott | Admissible only for purposes of cross-examination. |
| 140 | Affidavit of Gregory Turner | Inadmissible hearsay unless declarant is present for trial; not probative, irrelevant. |
| 141 | Affidavit of Kenneth Norris | Inadmissible hearsay unless declarant is present |

| | | for trial; not probative, irrelevant. |
|---|---|---|
| 142 | Affidavit of Wendel Brown | Inadmissible hearsay unless declarant is present for trial; not probative, irrelevant. |
| 143 | Affidavit of Anita Conley | Inadmissible hearsay unless declarant is present for trial; not probative, irrelevant. |
| 144 | Affidavit of Sheri Adams | Inadmissible hearsay unless declarant is present for trial; not probative, irrelevant. |
| 145 | Affidavit of Nicole Broadway | Inadmissible hearsay unless declarant is present for trial; not probative, irrelevant. |
| 146 | Affidavit of Melanie Cason | Inadmissible hearsay unless declarant is present for trial; not probative, irrelevant. |
| 147 | Affidavit of Nicole Calloway | Inadmissible hearsay unless declarant is present for trial; not probative, irrelevant. |
| 148 | Affidavit Sharon Daughtrey | Inadmissible hearsay unless declarant is present for trial; not probative, irrelevant. |
| 149 | Affidavit of Cynthia Jolley | Inadmissible hearsay unless declarant is present for trial; not probative, irrelevant. |
| 150 | Complaint filed by Terrell against Defendants in State Court of DeKalb County on 12.07.07 | Irrelevant. |

| 151 | Dismissal of State Court Complaint against Defendants filed by Terrell on 06.19.07 | Irrelevant, unduly prejudicial. |
|-----|-----|-----|

**ATTACHMENT H-1**

**<u>PLAINTIFF'S TRIAL BRIEF</u>**

Plaintiff has not submitted a trial brief at this time but reserve the right to do so at a later date.

**ATTACHMENT H-2**

**<u>DEFENDANTS' TRIAL BRIEF</u>**

Defendants do not submit a trial brief at this time but reserve the right to do so at a later date.

## ATTACHMENT I-1

## <u>PLAINTIFF'S VERDICT FORM</u>

<u>HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT</u>

Do you find that it is more likely than not:

1.        That Candace Terrell was subjected to a hostile or

abusive work environment because of her sex or gender?

Answer Yes or No _____

If your answer to Question 1 is "yes," then answer Question 2.

If you answered "no," stop here and answer no further

questions in this section.

2.        That such hostile or abusive work environment was

created by a supervisor with immediate or successively

higher authority over the Plaintiff?

Answer Yes or No _____

If your answer to Question 2 is "yes," then answer Question 3.

If you answered "no," stop here and answer no further

questions.

3.        That the Plaintiff suffered damages as a proximate or

legal result of such hostile or abusive work environment?

Answer Yes or No _____

If your answer to Question 3 is "yes," then answer Question 4.

If you answered "no," stop here and answer no further

questions.

4.      That Defendant OTS exercised reasonable care to prevent

        any sexually harassing behavior in the workplace?*

        Answer Yes or No _____

        If your answer to Question 4 is "no," proceed to Question

        6.  If you answer is "yes," proceed to Question 5.

5.      That

        (a) the Plaintiff unreasonably failed to take advantage

            of any preventative or corrective opportunities

            provided by the Defendant to avoid or correct the

            harm?*

        Answer Yes or No _____

        (b) the Plaintiff took advantage of the preventive or

            corrective opportunities provided by Defendant OTS

            and it then responded by taking reasonable and

            prompt corrective action?*

Answer Yes or No. _____

If you answered "no" to either 5(a) or 5(b), then

proceed to Question 6.  If you answered "yes" to either

5(a) or 5(b), then proceed no further.

6.      That the Plaintiff should be awarded damages to

compensate for a net loss of wages and benefits to the

date of trial?

Answer Yes or No _____

If your Answer is Yes, in what amount? $_____

Regardless of your answer, proceed to Question 7.

7.      That the Plaintiff should be awarded damages to

compensate for emotional pain and mental anguish?

Answer Yes or No  _____

If your Answer is Yes, in what amount? $_____

Regardless of your answer, proceed to Question 8.

8.      (a) That a higher management official of Defendant OTS

acted with malice or reckless indifference to the

Plaintiff's federally protected rights?

Answer Yes or No _____

(b)  If your answer is Yes, that the Defendant itself had

not acted in a good faith attempt to comply with the

law by adopting policies and procedures designed to

prohibit such discrimination in the workplace?

Answer Yes or No _____

(c)  If your answer is Yes to either 8(a) or (b), what

amount of punitive damages, if any, should be assessed

against Defendant OTS?   $_____

* These questions should be omitted if the Court determines that

Defendant OTS failed to plead or otherwise waived its *Faragher-Ellerth*

affirmative defense or that Carlos Lester was the alter ego of OTS.

<u>TANGIBLE EMPLOYMENT ACTION SEXUAL HARASSMENT</u>

Do you find that it is more likely than not:

1.  That Candace Terrell was subjected by her supervisor to sexual harassment or unwelcome sexual advances?

    Answer Yes or No  _____

    If your answer to this question is "yes," then answer the next question.  If you answered "no," stop here and answer no further questions in this section.

2.  That an adverse tangible employment action was imposed upon Candace Terrell as part of such sexual harassment or because she rejected such unwelcome sexual advances?

    Answer Yes or No  _____

    If your answer to this question is "yes," then answer the next question.  If you answered "no," stop here and answer no further questions in this section.

3.  That Candace Terrell suffered damages as a proximate or legal result of such sexual demand or threat?

    Answer Yes or No  _____

    If your answer is "Yes," in what amounts for:

      i.  Net lost wages and benefits to the date of trial

        $_____

      ii.  Mental and emotional humiliation or pain and anguish

        $_____

     iii.  Punitive damages, if any (as explained in the Court's

        instructions)

        $_____

4. (a)  That a higher management official of the Defendant acted with malice or reckless indifference to the Plaintiff's federally protected rights?

    Answer Yes or No _____

    (b)    If your answer is Yes, that Defendant OTS itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace?

    Answer Yes or No _____

(c) If you answer is Yes to either 4(a) or 4(b), what amount of punitive damages, if any, should be assessed against Defendant OTS?

$_____

<u>RETALIATION</u>

Do you find that it is more likely than not:

    1.     That Candace Terrell objected to conduct she reasonably considered to be sexual harassment?

Answer Yes or No  _____

If your answer to this question is "yes," then answer the next question.  If you answered "no," stop here and answer no further questions in this section.

    2.     That Defendant OTS demoted Candace Terrell after she objected to conduct she reasonably believed to be sexual harassment?

Answer Yes or No  _____

If your answer to this question is "yes," then answer the next question.  If you answered "no," stop here and answer no further questions in this section.

    3.     That Candace Terrell's demotion was causally related to her objections to the sexually harassing conduct?

Answer Yes or No  _____

If your answer to this question is "yes," then answer the next question.  If you answered "no," stop here and answer no further questions in this section.

4.      That Candace Terrell was harmed by the demotion?

Answer Yes or No  _____

If your answer to this question is "yes," then answer the next question.  If you answered "no," stop here and answer no further questions in this section.

5.      That Defendant OTS either knew that its conduct was prohibited by the law or showed reckless disregard for whether its conduct was prohibited by the law?

Answer Yes or No  _____

Regardless of your answer, proceed to the next question.

6.      That Candace Terrell should be awarded damages as follows:

(a) Net lost wages and benefits to the date of trial

$_____

(b) Mental and emotional humiliation or pain and anguish

$_____

(c) Punitive damages, if any (as explained in the

Court's instructions)

$_____

BATTERY

Do you find that it is more likely than not:

1. That Carlos Lester committed an unwanted touching against

   Candace Terrell?

   Answer Yes or No  _____

   If your answer to this question is "yes," then answer the next

   question.  If you answered "no," stop here and answer no

   further questions in this section.

2. That Carlos Lester either knew that his conduct was prohibited by

   the law or showed reckless disregard for whether his conduct was

   prohibited by the law?

   Answer Yes or No  _____

   Regardless of your answer, proceed to the next question.

3. That Carlos Lester acted with a specific intent to cause harm to

   Candace Terrell?

   Answer Yes or No  _____

   Regardless of your answer, proceed to the next question.

4. That Candace Terrell should be awarded damages as follows:

   $_____

<u>NEGLIGENT RETENTION</u>

Do you find that it is more likely than not:

1.  That Defendant OTS continued to employ Carlos Lester when it knew or should have known he had a propensity to commit unwanted touchings of fellow employees?

    Answer Yes or No  _____

    If your answer to this question is "yes," then answer the next question.  If you answered "no," stop here and answer no further questions in this section.

2.  That Defendant OTS either knew that its conduct was prohibited by the law or showed reckless disregard for whether its conduct was prohibited by the law?

    Answer Yes or No  _____

    Regardless of your answer, proceed to the next section.

3.  That Defendant OTS acted with a specific intent to cause harm to Candace Terrell?

    Answer Yes or No _____

    Regardless of your answer, proceed to the next question.

4.  That Candace Terrell should be awarded damages as follows:

$_____

<u>NEGLIGENT SUPERVISION</u>

Do you find that it is more likely than not:

1.      That Defendant OTS, in the exercise of reasonable care, should
        have known of Carlos Lester's reputation for committing
        unwanted touchings of fellow employees and that it was
        foreseeable that he would commit unwanted touchings of a
        female employee but continued to employ him?

        Answer Yes or No  _____

        If your answer to this question is "yes," then answer the next
        question.  If you answered "no," stop here and answer no
        further questions in this section.

2.      That Defendant OTS either knew that its conduct was prohibited
        by the law or showed reckless disregard for whether its conduct
        was prohibited by the law?

        Answer Yes or No  _____

        Regardless of your answer, proceed to the next question.

3.      That Defendant OTS acted with a specific intent to cause harm to
        Candace Terrell?

        Answer Yes or No  _____

Regardless of your answer, proceed to the next question.

4.     That Candace Terrell should be awarded damages as follows:

$_____

SO SAY WE ALL.

_____
Foreperson

DATED:      _____

# ATTACHMENT I-2

# **DEFENDANTS' VERDICT FORM**

I. Tangible Employment Action Sexual Harassment

     1.    Has Plaintiff proven by a preponderance of the evidence that she was subjected to unwanted or unwelcome sexual advances?

     \_\_\_\_\_ Yes

     \_\_\_\_\_ No

     If your response is "No," please proceed to Section II and answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 2.

     2.    Has Plaintiff proven by a preponderance of the evidence that she was subjected to an adverse employment action because she rejected such unwelcome sexual advances?

     \_\_\_\_\_ Yes

     \_\_\_\_\_ No

     If your response is "No," please proceed to Section II and answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 3.

3.      Has Plaintiff suffered any damages as a proximate result of being subjected to such unwelcome sexual advances and such adverse employment action?

_____ Yes, in the amount of $_____.

_____ No

4.      Do you find that the conduct of Defendant OTS, Inc. in subjecting Plaintiff to unwelcome sexual advances such that she suffered an adverse employment action was willful, malicious, intentional, or deliberate so as to warrant an award of punitive damages?

_____ Yes, in the amount of $_____.

_____ No

## II. Hostile Work Environment Sexual Harassment

1.      Has Plaintiff proven by a preponderance of the evidence that she was subjected to a hostile or abusive work environment such that the terms and conditions of her employment with Defendant OTS, Inc. were altered as a result?

_____ Yes

_____ No

If your response is "No," please proceed to Section III and answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 2.

2.     Did Defendants OTS, Inc. exercise reasonable care to prevent sexual harassment in the workplace, such as by promoting policies and procedures regarding discrimination and harassment?

\_\_\_\_\_ Yes

\_\_\_\_\_ No

3.     Did Plaintiff Terrell unreasonably fail to take advantage of any preventative or corrective policies or procedures provided by Defendant OTS, Inc.?

\_\_\_\_\_ Yes

\_\_\_\_\_ No

If your responses to Question Nos. 2 and 3 are "Yes," please proceed to Section III and answer no further questions in this section.  If your response to either Question Nos. 2 or 3 is "No," please proceed to Question No. 4.

4.     Has Plaintiff suffered any damages as a proximate result of being subjected to a hostile work environment?

\_\_\_\_\_ Yes, in the amount of $_____.

\_\_\_\_\_ No

5.     Do you find that the conduct of Defendant OTS, Inc. of subjecting Plaintiff to a hostile work environment was willful, malicious, intentional, or deliberate so as to warrant an award of punitive damages?

\_\_\_\_\_ Yes, in the amount of $_____.

\_\_\_\_\_ No

III. Retaliation

     1.    Has Plaintiff proven by a preponderance of the evidence that she complained about sexual harassment while employed with OTS, Inc.?

     _____ Yes

     _____ No

     If your response is "No," please proceed to Section IV and answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 2.

     2.    Has Plaintiff proven by a preponderance of the evidence that as a result of her complaints, Plaintiff suffered an adverse employment action when she was transferred to the OTS Financial Aid Department?

     _____ Yes

     _____ No

     If your response is "No," please proceed to Section IV and answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 3.

     3.    Did Plaintiff suffer any damages as a proximate result of her transfer to the OTS Financial Aid Department?

     _____ Yes, in the amount of $_____.

     _____ No

4.     Do you find that the conduct of Defendant OTS, Inc. of transferring Plaintiff to the Financial Aid Department was willful, malicious, intentional, or deliberate so as to warrant an award of punitive damages?

_____ Yes, in the amount of $_____.

_____ No

## IV.  Battery

1.     Has Plaintiff proven by a preponderance of the evidence that Defendant Carlos Lester committed an unwanted touching against her?

_____ Yes

_____ No

If your response is "No," please proceed to Section V and answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 2.

2.     Has Plaintiff proven by a preponderance of the evidence that Defendant Carlos Lester intended to commit such unwanted touching?

_____ Yes

_____ No

If your response is "No," please proceed to Section V and answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 3.

3.      Did Plaintiff suffer any damages as a proximate result of such unwanted touching?

_____ Yes, in the amount of $_____.

_____ No

V.  Negligent Retention

1.      Has Plaintiff proven by a preponderance of the evidence that Defendants OTS, Inc. continued to employ Carlos Lester when it knew or should have known that he had a propensity to commit unwanted touching of employees?

_____ Yes

_____ No

If your response is "No," please proceed to Section VI and answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 2.

2.      Has Plaintiff proven by a preponderance of the evidence that Defendants OTS, Inc. knew Carlos Lester's conduct was prohibited or exhibited a reckless disregard for whether or not his conduct was prohibited by law?

_____ Yes

_____ No

If your response is "No," please proceed to Section VI and answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 3.

3.      Did Plaintiff suffer any damages as a proximate result of Defendant OTS, Inc.'s supervision of Carlos Lester?

_____ Yes, in the amount of $_____.

_____ No

## VI.  Negligent Supervision

1.      Has Plaintiff proven by a preponderance of the evidence that it was reasonably foreseeable to Defendants OTS, Inc. that Defendant Carlos Lester would commit unwanted touching of employees?

_____ Yes

_____ No

If your response is "No," please answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 2.

2.      Has Plaintiff proven by a preponderance of the evidence that Defendants OTS, Inc. knew Carlos Lester's conduct was prohibited or exhibited a reckless disregard for whether or not his conduct was prohibited by law?

_____ Yes

_____ No

If your response is "No," please answer no further questions in this section.  If your response is "Yes," please proceed to Question No. 3.

3.     Did Plaintiff suffer any damages as a proximate result of Defendant OTS, Inc.'s supervision of Carlos Lester?

_____ Yes, in the amount of $_____.

_____ No

_____          _____
DATE                                                    FOREPERSON